| | |
|---|---|
| DISTRICT COURT, BROOMFIELD COUNTY, STATE OF COLORADO<br><br>17 Descombes Dr,<br>Broomfield, CO 80020 | |
| **Plaintiffs:   IVON GONZALEZ MARTINEZ, ADRIAN CUEVAS CASTRUITA, MARTHA CELENE ARELLANO, ALEXANDRA CASTRUITA ARELLANO, and JESUS ARRENDONDO CALDERA.**<br><br>**v.**<br><br>**Defendants:  FRANCES CHRISTINE MENESES and MENESES LAW PLLC, a Texas Professional Limited Liability Company,** | DATE FILED<br>November 12, 2025 2:14 PM<br>FILING ID: 1417D529E108D<br>CASE NUMBER: 2025CV30301<br><br><br>▲COURT USE ONLY▲ |
| **Plaintiffs' Attorneys:**<br><br>Name:        Beth Klein, 17477<br>Address:     Beth Klein, P.C.<br>             350 Market Street, Suite 310<br>             Basalt, CO  81621<br>Phone No.:   303-448-8884<br>Fax No.:     303-861-2449<br>Email:       beth@kleinfrank.com<br><br>Name:        Sarah A. Logan, 39472<br>Address:     The Logan Firm, P.C.<br>             4150 Darley Avenue, Suite 6<br>             Boulder, CO 80305<br>Phone No.:   (303) 494-5209<br>Fax No.:     (303) 379-4280<br>Email:       sarah@loganfirm.us | Case No.:<br><br><br>Div:              Crtrm: |
| **COMPLAINT FOR LEGAL MALPRACTICE, FRAUD, BREACH FIDUCIARY DUTIES, AND INJUNCTIVE RELIEF** | |

Plaintiffs submit their Complaint.

EXHIBIT  A

## CERTIFICATE OF REVIEW

Pursuant to C.R.S. § 13-20-602 I, THE UNDERSIGNED ATTORNEYS certify that we have consulted attorneys who have expertise in the area of the alleged negligent conduct; and that the professionals who have been consulted (a) have reviewed the known facts, including the fee agreement, billing records, pleadings, Defendants' file, documents, and other materials and emails from the Defendants which the professionals have found to be relevant to the allegations of negligent conduct and, based on the review of such facts, has concluded that the filing of the claim does not lack substantial justification within the meaning of section 13-17-102 (4).

## A. THE PARTIES

1.      Through their fraudulent practices, Defendants preyed upon undocumented immigrants, Plaintiffs here, who are seeking to adjust their immigration status in good faith. Plaintiffs relied on the integrity and professionalism of the Defendant attorneys to assist them in attaining the security of lawful permanent residency in the United States.

2.      However, Respondents collaborated to repeatedly and persistently engage in fraudulent conduct. Defendants lured clients by representing that lawful permanent residence (or securing a "green card") could be attained by simply having a child over the age of twenty-one or a spouse who is a United States citizen.

3.      Without Plaintiffs' knowledge, Respondents repeatedly and intentionally submitted fraudulent 1-360 petitions under the Violence Against Women Act ("VAWA") on behalf of their Plaintiff undocumented immigrant clients falsely claiming their eligibility as a self-petitioning parents of an abusive U.S. citizen son or daughter who is 21 years old or older, or as a self-petitioning spouse of abusive U.S. citizens or lawful permanent residents in order to secure immigration benefits.

4.     Defendants pursued this scam without inquiring with their clients to establish this basis or even informing them that they were seeking VA WA relief on their behalf.

5.     Ivon Gonzalez Martinez ("Martinez") is a citizen of the United States residing at 5000 Butte Street, Lot 188, Boulder, Colorado 80301.

6.     Adrian Cuevas Castruita ("Castruita") is a citizen of Mexico residing at 5000 Butte Street, Lot 188, Boulder, Colorado 80301.

7.     Martha Celene Arellano Aguilar ("Aguilar") is a citizen of Mexico residing at 4500 19th Street, Lot 540, Boulder, CO  80304.

8.     Alexandra Castruita Arellano ("Arellano") is a citizen of the United States residing at 4500 19th Street, Lot 540, Boulder, CO  80304.

9.     Jesus Arrendondo Caldera ("Caldera") is a citizen of Mexico residing at 4500 19th Street, No. 446,  Boulder, Colorado 80304.

10.     Frances Christine Meneses ("Meneses") is a resident and citizen of the State of Texas residing in Houston, Texas.

11.     Meneses Law, PLLC ("Law Firm") is a Texas professional limited liability company with its principle place of business at 2900 North Loop West, Suite 300, Houston, Texas 77092 and doing business at 11101 West 120th Avenue, Broomfield Colorado and in Denver, Colorado. https://www.meneses.law/immigration-attorneys-denver.

12.     Meneses is owner and an employee of the Law Firm.

13.     Meneses' acts and omissions stated in this Complaint occurred within the course and scope of her employment at the Law Firm.

### B. PERSONAL JURISDICTION OVER THE DEFENDANTS.

14.     Meneses and the Law Firm conduct business at two offices.  One office is in Denver, and the other office is located at 11101 West 120th Avenue, Broomfield, CO 80021.  See

https://www.indeed.com/viewjob?jk=24c12bef8c904d46  The below electronic solicitation was sent to Caldera touting new offices in Denver, CO & Boulder, CO "Now we are much closer to you!"



15.    Meneses and the Law Firm have purposefully  availed themselves of the benefits and protections of the Colorado's laws by opening two known offices in the State of Colorado, contracting with and providing legal representation to hundreds of clients in the State of Colorado, and engaging in targeted marketing to grow their business and profit from residents the State of Colorado.

16.    The Defendants have entered into hundreds of fee agreements with clients residing in the State of Colorado.

17.    The Defendants have collected fees and established payments accounts with clients residing in the State of Colorado.

18.    The Defendants have routinely called, emailed, met, and conducted video conferences and interviews with their clients in the State of Colorado.  The fee agreements included representation at interviews at the United States Citizenship and Immigration Service Denver field office.

19.     The Defendants have asked their Colorado clients to record marketing videos, take photographs, and give Google and other social media reviews to promote the Defendants' services in the State of Colorado.

20.     The Defendants have intentionally and systematically asked Colorado clients to assist in the building of their law firm business and client base in Colorado by requesting referrals of other potential clients residing in Colorado.

21.     The Defendants have, at all times relevant, intended to profit from the Colorado market of Colorado clients needing representation in immigration matters.

22.     The Defendants' contacts with the State of Colorado relate directly to the contacts and claims asserted in this matter which involve legal malpractice, fraud, and breach of fiduciary duties during the Defendants' representation of Plaintiffs Castruita, Aguilar, and Caldera in immigration matters.

23.     The Defendants' contacts with the State of Colorado also relate directly to the fraudulent declarations making accusations of severe abuse and cruelty prepared and submitted to the United States government concerning Martinez and Arellano, both citizens of the State of Colorado.

24.     This Court has jurisdiction over this action pursuant to **§ 13-1-124** the Defendants maintain offices in Denver and Broomfield, Colorado and transact substantial business in the State of Colorado.

C.     **THE DEFENDANTS' SYSTEMATIC DECEPTION IN VAWA CLAIMS**

25.     Meneses and the Law Firm advertise that their annual revenues are between $25,000,000.00 and $100,000,000.00 when soliciting employees in the State of Colorado for their offices.

https://www.indeed.com/cmp/Meneses-Law

26.     The Defendants target and advertise for Colorado clients on

- Facebook https://www.facebook.com/meneseslaw.

- Instagram https://www.instagram.com/meneses_law,

- TikTok https://www.tiktok.com/@abogadameneses?lang=en,

- Web Page https://www.meneses.law/

27. Defendants intentionally omit in their advertising and in client advisements during their representation that in order to qualify for a work permit and adjust to lawful permanent resident status under the VAWA provisions, a US citizen son, daughter, or spouse must have engaged in acts of abuse or extreme cruelty against the client seeking a work permit and lawful permanent resident status.   www.uscis.gov/humanitarian/abused-spouses-children-and-parents.  Exhibit A.

28. With the passage of the Violence Against Women Act of 1994 (VAWA) and its subsequent reauthorizations, Congress provided aliens who have been abused or subjected to extreme cruelty by their U.S. citizen or lawful permanent resident relative the ability to independently petition for themselves (self-petition) for immigrant classification without the abuser's knowledge, consent, or participation in the immigration process.

29. This allows victims to seek both safety and independence from their abusers.

30. Under VAWA spouses and children of U.S. citizens and lawful permanent residents, and parents of U.S. citizens who are 21 years of age or older, may file a self-petition for immigrant classification with USCIS.

31. An alien filing the self-petition is generally known as a VAWA self-petitioner and the form number used to file the petition is the I-360.

32. If USCIS approves the I-360 self-petition, VAWA self-petitioners may be eligible for lawful permanent resident status (sometimes referred to as a "Green Card").

33. The application for permanent resident status is filed on form number I-485, Application for Adjustment of Status, which may be filed concurrently with the I-360 self-petition.

34. The Defendants have created a company-wide automated system to acquire clients and

process their claims, concealing the fact that spouses or children of the client will be accused of extreme abuse and/or cruelty before the United States in VAWA claims.

35.     The Defendants' marketing intentionally omits references of the essential element for VAWA claim that the client has been subject to extreme abuse and/or cruelty by a child or spouse.

36.     The Defendants' systematic form marketing texts to former or prospective clients asking for referrals omit references to the essential element VAWA claims that the client has been subject to extreme abuse and/or cruelty by a child or a spouse.

37.     The Defendants' standardized text messages to clients during their representation omit any references to the essential elements for and I-360 claims that the client has been subject to extreme abuse and/or cruelty by a child or a spouse.

38.     The Defendants' advisory videos to clients concerning the VAWA claims process intentionally omits information that a client's family member will be accused of severe abuse or cruelty.  https://www.meneses.law/antes-de-su-declaracion  See Certified Translation attached as Exhibit B.

39.     The Defendants refer to these claims as "three-sixty" cases instead of VAWA.

40.     Specifically, the Defendants advertise for Colorado clients who want a work permit who have a spouse or a child over the age of twenty-one, omitting critical information.    See: www.meneses.law.com.

**Getting your** work permit **and** residency **can be made simple!**



**Are you:**

- **Married to a U.S. citizen?**
- **Parent to a U.S. citizen who is 21 years or older?**

Our **Immigration Lawyers** at MENESES LAW make it an intuitive process.

41. The Defendants have filed fraudulent Violence Against Women Act Claims ("VAWA Claims"), fabricated false declarations alleging severe abuse or cruelty, forged signatures, and filed applications for immigration benefits for their clients residing in the State of Colorado with false evidence.

42. The Defendants' scheme of filing fraudulent claims from which they derive substantial profit harms residents of the State of Colorado.

43. Federal Diversity Jurisdiction is not proper because the claim of Caldera is based upon the balance of the of fees that the Defendants did not earn because they were acquired by fraud and have not refunded in the amount of $3,500.00.

## D.    VENUE

44. Venue is Proper in Broomfield, Colorado pursuant to C.R.C.P. 98(c)(1) because the Defendants have offices and conduct business at 11101 West 120th Avenue, Broomfield, CO 80021.

## E.  MARTINEZ AND CASTRUITA

45. Castruita contacted The Law Firm and spoke with an employee who told him that getting his work permit would be "easy" and that the Defendant could "work magic with work permits" and obtain them within months of applying.

46. On April 3, 2023, the Defendants entered into a Fee Agreement and Authority to Represent Castruita.

47. An attorney client relationship was established between the Defendants and Castruita on April 3, 2023.

48. Defendants agreed to gather, prepare, and serve the following documents with the U.S. Citizenship and Immigration Services ("USCIS"), an agency of the United States Department of Homeland Security:

    a.      Prepare the I-360

    b.      Prepare the I-765 (Application for Employment Authorization)

    c.      Prepare the I-131 (Application for Travel and Parole) and

    d.      Prepare the I-485 (A form to apply for permanent residency)

49.     A true and accurate copy of the Castruita Fee Agreement is attached as Exhibit C.

50.     The Defendants agreed to service the case with USCIS and attend an interview with Castruita in Denver, Colorado, as necessary.

51.     The Defendants spoke with Castruita to get information to prepare the case.

52.     At no time did the Defendants advise Castruita that they were going to file pleadings and documents accusing his wife Martinez of extreme abuse.

53.     At no time did Castruita tell the Defendants that Martinez had severely abused him.

54.     Martinez and Castruita share a joint email account, and this account was used to provide information to the Defendants.

55.     The Defendants never emailed Martinez or Castruita any information that an abuse allegation would be made against Martinez.

56.     A payment plan was established with the Defendants.

57.     Plaintiffs paid the Defendants in full for the flat fee for services totaling $11,550.00.

58.     On May 3, 2023, the Defendants entered their appearance for filing the documents necessary to process Castruita's immigration case.

59.     On May 10, 2023, the Defendants submitted a cover letter with Form I-360 with Adjustment of Status Application alleging that Castruita qualifies for the I-360 Adjustment of Status. (Exhibit D).

60.     Castruita was not provided with a copy of the letter or application packet at the time his application was submitted.

61.    Unbeknownst to Castruita, the legal basis for Castruita's Form I-360 was based upon a Violence Against Woman Act self-petitioning spouse of an abusive U.S. citizen or lawful permanent resident under 8 CFR 204.2.

62.    The Defendants prepared and filed an I-360 application, that alleged shocking, false and defamatory statements concerning United States citizen, Martinez asserting that she engaged in psychological, emotional, verbal, physical, sexual and financial abuse against her husband Castruita.

63.    The Defendants completely fabricated the allegations in Exhibit D, the cover letter to the I-360 petition, Exhibit E, the legal arguments in support of the I-360 petition, and Exhibit F the fraudulent Declaration submitted with the I-360 petition.

64.    The Defendants did not give the I-360 petition and Exhibits D, E and F to Castruita to review and approve prior to their submission.

65.    The electronic signature on the Form I-360 and Exhibit F is an electronic signature that was applied to the document by the Defendants without Castruita's knowledge and approval.

66.    Castruita did not know that the Defendants filed false statements with Castruita's Form I-360.

67.    The paragraphs in Exhibit F entitled "Psychological Abuse," "Emotional Abuse," "Verbal Abuse," "Physical "Abuse," "Sexual Abuse," "Financial Abuse," and Conclusion are all false.

68.    On June 20, 2023, a determination was made that a prima facia case had been established under the self-petitioning provisions VAWA based upon false documents filed by the Defendants.

69.    Castruita received his work permit on February 4, 2024 based upon false documents filed by the Defendants.

70.    Hearing that the Defendants were filing false VAWA claims, Castruita requested a copy of his client file from the Defendants on January 31, 2025.

71.    Castruita finally received a copy of his client file from the Defendants on or about February

18, 2025.

72.     The Defendants instructed Castruita to keep the file confidential. stating falsely that: "the information contained within the enclosed file is confidential and protected by both attorney-client privilege and the work product doctrine."

73.     After receiving the file on February 18, 2025, and for the first time Martinez and Castruita read the file and realized that false and defamatory statements had been made to support the I-360 Application.

74.     Castruita would have never retained the Defendants had he known that the Defendants intended to engage in fraud and falsely accused Martinez of extreme abuse.

75.     Castruita retained successor counsel and withdrew his I-360 Application and returned his work permit.

76.     Castruita returned his work permit to USCIS by mail and requested that USCIS withdraw his approved petition and pending application for adjustment of status at severe risk to himself and family.

77.     When Martinez read the file and the statements about abuse that had been made about her, she was humiliated, horrified, and physically ill.

78.     Martinez is a survivor of sexual assault, and being falsely accused of being a perpetrator in official pleadings was overwhelming.

79.     On information and belief Defendants have filed false declarations and statements targeting Martinez in other immigration cases.

80.     The Defendants' conduct in representing Castruita was reckless, willful and wanton, entitling Castruita to punitive damages contingent upon a successful Motion filed pursuant to C.R.S. § 13-21-102.

FIRST CLAIM FOR RELIEF

(Legal Malpractice – Plaintiff Castruita)

81.     The Defendants were negligent when they engaged in the following acts that reasonably

careful attorneys would not do and failed to do acts that reasonably careful attorneys would do:

a.      The Defendants failed to properly advise Castruita of the requirements to make a VAWA
claim.

b.      The Defendants failed to properly advise the Castruita of the I-360 process.

c.      The Defendants failed to permit Castruita to review the declaration prior to its filing.

d.      The Defendants forged Castruita's signature to documents containing false statements
without his knowledge.

e.      The Defendants failed to train and supervise staff on the proper procedures to process I-360
claims.

f.      The Defendants pressured staff to meet unreasonable quotas and emphasized profit over the
ethical and honest practice of law.

g.      The Defendants failed to investigate evidence of extreme abuse, analyze Castruita's actual
circumstances, and advise Castruita that he did not have a valid VAWA claim and the risks of filing a
fraudulent claim.

h.      The Defendants failed to properly prepare legal documents based upon valid theories of law.

i.      The Defendants fabricated facts contained the declaration in an effort to mislead the
tribunal, USCIS.

82.     The Defendants breached their duty of care to Castruita and were negligent.

83.     The breach of their duty to Castruita proximately caused Castruita to suffer damages and

losses including the loss of the attorney's fees paid to the Defendants in the amount of $11,550.00.


<u>SECOND CLAIM</u>
<u>FOR RELIEF</u>
(Fraud/Concealment – Castruita)

84.     The Defendants concealed that they filed false and defamatory statements in connection

with Castruita's immigration case.

85.    The Defendants forged Castruita's signature on documents they filed with the United States government.

86.    Castruita had no knowledge that the Defendants filed false papers with the United States government or forged his signature.

87.    Castruita's reliance on the Defendants' omissions was justified.

88.    The Defendants at all times knew the consequences of filing fraudulent documents with the United States government.

89.    The Defendants purposefully filed fraudulent documents which the Defendants must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of Castruita.

90.    Castruita's justified reliance has caused damages and losses to Castruita losses including the loss of the attorney's fees paid in the amount of $11,550.00.

FOURTH CLAIM FOR RELIEF
(Breach of Fiduciary Duty Castruita)

91.    At all relevant times the Defendants were acting as fiduciaries of Castruita.

92.    The Defendants through their national corporate scheme acted with an improper motive based on their self-interest to profit substantially to now command an annual revenue of $25,000,000.00 to $100,000.000.00.

93.    At all times relevant, the Defendants structured an unchecked automated VAWA practice to rapidly acquire and file thousands of VAWA claims, without regard for the merit of the claims.

94.    The Defendants put their goal to nationalize and scale the acquisition of clients, the payment of retainers and fees, and their profits, over their duties the Defendants owed to their clients to represent them with undivided loyalty.

95.    The Defendants' conflict of interest and divided loyalty adversely affected clients, including Castruita.

96.    At all relevant times, the Defendants had no requirement that clients must review and personally sign documents in their cases.

97.    At all relevant times, the Defendants, through their paralegal pool routinely fabricated declarations to be filed in VAWA cases.

98.    At all relevant times Meneses did not systematically check the work of her staff, and instead devoted her time to internet advertising, making videos and memes, and growing her business and profits.

99.    At all relevant times the Defendants did not bother to interview Castruita concerning "extreme abuse."

100.    The Defendant's national corporate scheme is a breach of fiduciary duty and rises to the level of a breach of trust.

101.    The Defendant's breach of fiduciary duty has caused Castruita to suffer non-economic losses starting in February 2025 knowing the risk of harm that the Defendants created for him and attorney's fees for prosecuting this matter in the current amount of $2000.00.

102.    The Defendants placed Castruita at risk of being deported from the United States if his claim were to be adjudicated and denied.

103.    The Defendants prejudiced Castruita's meritorious means of gaining lawful permanent resident status through his wife with a waiver proving that she would suffer extreme hardship if he were to be denied admission to the United States.

104.    The Defendants have negligently exposed Castruita to a finding of inadmissibility to the United States under §212(a)(6)(C)(i) of the Immigration and Nationality Act ("INA") for having, by fraud or willful misrepresentation of a material fact, sought to procure… a visa, other documentation, for admission into the United States or other benefit".

105. The Defendants caused stress in his marriage because his wife, was falsely accused of abuse and extreme cruelty before the United States government.

## F. AGUILAR AND ARELLANO

106. On April 12, 2024, the Defendants entered into a Fee Agreement and Authority to Represent Aguilar.  (Exhibit G)

107. An attorney client relationship was established between the Defendants and Aguilar on April 12, 2024.

108. Defendants agreed to gather, prepare, and serve the following documents with the U.S. Citizenship and Immigration Services ("USCIS"), an agency of the United States Department of Homeland Security:

    a.      Prepare the I-360

    b.      Prepare the I-765 (Application for Employment Authorization) and

    c.      Prepare the I-485 (A form to apply for permanent residency)

A true and accurate copy of the Aguilar Fee Agreement is attached as Exhibit G.

109. The Defendants agreed to service the case with USCIS and attend an interview with Aguilar as necessary.

110. The Defendants spoke with Aguilar to get information from her in order to prepare the case.

111. At no time did the Defendants advise Aguilar that they were going to file a declaration and documents accusing Arellano of abuse or extreme cruelty.

112. At no time did Agular tell the Defendants any facts supporting the claim that Arellano engaged in abuse or acts of extreme cruelty.

113. A payment plan was established with the Defendants.

114. Plaintiffs paid the Defendants in full for the flat fee for services totaling $14,550.00.

115. On April 15, 2024, the Defendants entered their appearance for filing the documents

necessary to process Aguilar's immigration case.

116.    On July 15, 2024, the Defendants submitted a cover letter with Form I-360 with Adjustment

of Status Application alleging that Aguilar qualifies for the I-360 Adjustment of Status. (Exhibit H)

117.    The Defendants prepared and filed alleged shocking, false and defamatory statements

concerning United States citizen, Arellano asserting that she engaged in psychological, emotional,

verbal, physical, and financial abuse against her mother Aguilar.

118.    The Defendants completely fabricated the basis for the I-360 application, the statements in

the Cover letter for the I-360 application, (Exhibits H) the Declaration of Aguilar (Exhibit I) and the

Legal Arguments (Exhibit J).

119.    The Defendants did not give the I-360 Form and Exhibits H, I, and J to Aguilar for review

and approve prior to their submission.

120.    The electronic signatures for the I-360 Form and Exhibits H I, J and  were copied from the

fee agreement that Aguilar signed with the Defendants.

121.    The electronic signature was used on the I-360 Form and Exhibit I without the permission

of Aguilar.

122.    The Plaintiffs did not know that the Defendants filed false statements with Aguilar's Form I-

360 and Exhibit H, I, and J.

123.    On September 23, 2024, a determination was made that a prima facia case had been

established under the self-petitioning provisions VAWA based upon false documents filed by the

Defendants.

124.    Aguilar received her work permit based upon false documents filed by the Defendants.

125.    Hearing that the Defendants were filing false VAWA claims, Aguilar requested a copy of her

client file from the Defendants on April 4, 2025.

126.    Aguilar finally received a copy of her client file from the Defendants on or about May 8,

2025.

127.    The Defendants instructed Aguilar to keep the file confidential, stating falsely that: "the information contained within the enclosed file is confidential and protected by both attorney-client privilege and the work product doctrine."

128.    After receiving the file on May 8, 2025 and for the first time Aguilar and Arellano read the file and realized that false and defamatory statements had been made to support the I-360 Application.

129.    Aguilar would have never retained the Defendants had she known that the Defendants intended to engage in fraud and falsely accuse Martinez of extreme abuse.

130.    Aguilar retained successor counsel, returned her work permit and requested that USCIS withdraw her approved petition and pending application for adjustment of status at severe risk to herself and family.

131.    When Arellano read the file and all of the statements about abuse that had been made about her she was humiliated, horrified, and physically ill.

132.    The Defendants' conduct in representing Aguilar was reckless, willful and wanton, entitling Castruita to punitive damages contingent upon a successful Motion filed pursuant to C.R.S. § 13-21-102.

### FIFTH CLAIM FOR RELIEF
(Legal Malpractice – Aguilar)

133.    The Defendants were negligent when they engaged in the following acts that reasonably careful attorneys would not do and failed to do acts that reasonably careful attorneys would do:

a.    The Defendants failed to properly advise Aguilar of the requirements to make a VAWA claim.

b.    The Defendants negligently failed to properly advise Aguilar of the I-360 process.

c.    The Defendants negligently failed to permit Aguilar to review the declaration prior to their filing.

d.      The Defendants forged Aguilar's signature placing it on documents containing false statements without her knowledge.

e.      The Defendants failed to train and supervise staff on the proper procedures to process I-360 claims.

f.      The Defendants pressured staff to meet unreasonable quotas and emphasized profit over the honest ethical and honest practice of law.

g.      The Defendants failed to investigate evidence of extreme abuse, did not analyze her actual circumstances, and never advised Aguilar that she did not have a valid VAWA claim and the risks of filing a fraudulent claim.

h.      The Defendants failed to properly prepare legal documents based upon valid theories of law.

i.      The Defendants fabricated facts contained the declaration in an effort to mislead the tribunal, USCIS.

134.    The Defendants breached their duty of care to Aguilar and were negligent.

135.    The breach of their duty to Aguilar proximately caused Aguilar to suffer damages and losses including the loss of the attorney's fees paid in the amount of $14,550.00.

SIXTH CLAIM FOR RELIEF
(Fraud/Concealment – Aguilar)

136.    The Defendants concealed that they filed false and defamatory statements in connection with Aguilar's immigration case.

137.    The Defendants forged Agular's signature on documents they intended to file with the United States government.

138.    Aguilar had no knowledge that the Defendants filed false papers with the United States government or forged his signature.

139.    Aguilar's reliance on the Defendants' omissions was justified.

140.    The Defendants at all times knew the consequences of filing fraudulent documents with the United States government.

141.    The Defendants purposefully filed fraudulent documents which the Defendants must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of Aguilar.

142.    The Defendants' conduct has caused damages and losses to Aguilar losses including the loss of the attorney's fees paid in the amount of $14,550.00.

SEVENTH CLAIM FOR RELIEF<br>(Breach of Fiduciary Duty Aguilar)

143.    At all relevant times, the Defendants were acting as fiduciaries of Aguilar.

144.    The Defendants through their national corporate scheme acted with an improper motive based on their self-interest to profit substantially to now command an annual revenue of $25,000,000.00 to $100,000,000.00.

145.    At all times relevant, the Defendants structured an unchecked automated VAWA practice to rapidly acquire and file thousands of VAWA claims, without regard for the merit of the claims.

146.    The Defendants put their goal to nationalize and scale the acquisition of clients, the payment of retainers and fees, and their profits, over their duties the Defendants owed to their clients to represent them with undivided loyalty.

147.    The Defendants' conflict of interest and divided loyalty adversely affected clients, including Aguilar.

148.    At all relevant times, the Defendants had no requirement that clients must review and personally sign documents in their cases.

149.    At all relevant times, the Defendants, through their paralegal pool routinely fabricated declarations to be filed in VAWA cases.

150.    At all relevant times Meneses did not systematically check the work of her staff, and instead devoted her time to internet advertising, making videos and memes, and growing her business and profits.

151.    At all relevant times the Defendants did not bother to interview Aguilar concerning "extreme cruelty" and instead merely checked a box that there was a US citizen relative over the age of twenty-one, and fabricated evidence.

152.    The Defendant's national corporate scheme is a breach of fiduciary duty and rises to the level of a breach of trust.

153.    The Defendant's breach of fiduciary duty has caused Aguilar to suffer non-economic losses starting May 12, 2025, knowing the risk of harm that the Defendants created for her and attorney's fees for prosecuting this matter in the current amount of $2000.00.

154.    The Defendants placed Aguilar at risk of being deported from the United States if her claim were to be adjudicated and denied.

155.    The Defendants prejudiced Aguilar's meritorious means of gaining lawful permanent resident status through her United States citizen daughter, along with a waiver proving that  her lawful permanent resident mother would suffer extreme hardship if he were to be denied admission to the United States.

156.    The Defendants have negligently exposed  Aguilar to a finding of inadmissibility to the United States under §212(a)(6)(C)(i) of the INA  for having, by fraud or willful misrepresentation of a material fact, sought to procure… a visa, other documentation, for admission into the United States or other benefit".

### G.    CALDERA

157.    On May 23, 2024, Caldera entered into a Fee Agreement with the Defendants.

158.    An attorney client relationship was established between the Defendants and Caldera on May 23, 2024.

159.    A true and accurate copy of the Caldera Fee Agreement is attached as Exhibit K.

160.    Defendants agreed to gather, prepare, and serve the following documents with the U.S.

Citizenship and Immigration Services ("USCIS"), an agency of the United States Department of Homeland Security:

a.    Prepare the I-360

b.    Prepare the I-765 (Application for Employment Authorization) and

c.    Prepare the I-485 (A form to apply for permanent residency)

161.    The Defendants agreed to service the case with USCIS and attend an interview with Caldera as necessary.

162.    The Defendants briefly interviewed Caldera by telephone and filled out an intake form on July 3, 2024, in English to get information from him in order to prepare the case.

163.    Caldera does not read English and did not complete the form on-line or in Spanish.

164.    The Defendants had Caldera sign a form authorizing the Defendants to use this signature for any reason in his immigration case.  (Exhibit K)

165.    Unknown to Caldera, Defendants determined that they would target then 23-year-old Alison Arredondo, Caldera's daughter, as an abuser because she was the only child over the age of 21.

166.    The Defendants never communicated to Caldera that Alison Arredondo would be alleged to have engaged in abuse or extreme cruelty against him.

167.    In text messages, the Defendants requested documents asking for evidence that Caldera had lived with his daughter for three months.

168.    In text messages, the Defendants did not use the language "abuser."  Instead, the requests for documents used the word "child" and "children" as follows:

Birth certificates for you and your children

Proof of 3 months of living together with your child

(such as a lease agreement, utility bills, bank statement, etc.)

4 passport-style photos

Proof of your child's citizenship/residence

Last 3 years of tax returns (not required)

Police Clearance Certificate

Letters of recommendation attesting to good moral character

(can be from an employer, friend, or someone from your church)

Consular ID or passport

169.    No interview was conducted with Caldera to get specific facts that Alison Arredondo was an abuser or engaged in severe cruelty.

170.    The Defendants are believed to have fabricated a declaration that Alison Arredondo was an abuser because in the file it is noted that "Battery/EC: Client's declaration listing psych, emotional, verbal, physical, and financial abuse INA 204(a)(1)(A)(vii)(V); 8 CFR 204.2 (e)(1)(vi)" that was reviewed by Rachel Robertson, Associate on December 13 2024 during an internal legal analysis.

171.    The declaration reviewed by Associate Rachel Robertson was not produced with the client file from the Defendants.

172.    At no time did the Defendants advise Caldera that they were going to file pleadings and documents accusing his daughter of extreme abuse or cruelty for a VAWA claim.

173.    At no time did Caldera tell the Defendants any facts supporting the claim that Caldera's daughter engaged in acts of extreme abuse or cruelty.

174.    Nonetheless, Rachel Robertson determined on December 13, 2024, that Caldera qualified for a VAWA claim.

175.    A flat fee totaling $14,550.00 was established with the Defendants.

176.    Plaintiffs paid the Defendants $9,050.00 through April 25, 2025.

177.     On April 25, 2025, Caldera became concerned about his claim and wrote a letter to the Defendants requesting a copy of the file and adequate assurances that no false or defamatory

statements were being used in this case.  Exhibit M.

178.    In response to the letter of April 25, 2025, the Defendants fired Caldera and on September 9, 2025, refunded $5,550.00 of the fees that he paid.

179.    The Defendants did not provide the complete file to Caldera.

180.    The Defendants claimed that they earned $3,500.00 and did not refund this money.

181.    Because the Defendants defrauded Caldera into paying them money to file a fraudulent VAWA claim, the $3,500.00 is owed to Caldera.

182.    To this day, Defendants text Caldera and ask for referrals for new VAWA claims.  See Exhibit N.

EIGHTH CLAIM FOR RELIEF
(Fraud in the Inducement – Caldera)

183.    The Defendants concealed that they intended to file a fraudulent and baseless VAWA claim on behalf of Caldera. As attorneys for Caldera, the Defendants had a duty to disclose the fact that they were going to file a VAWA claim.

184.    The fact was material.

185.    The Defendants concealed their plan with the intent of creating a false impression of the actual facts in the mind of Caldera. The Defendants concealed the fact with the intent that Caldera retain their firm for legal services and pay them attorney's fees, an act that Caldera would not have taken if he knew the actual facts.

186.    Caldera retained the Defendants and paid them legal fees relying on the assumption that the Defendants would not file a fraudulent and baseless VAWA claim.

187.    Caldera's reliance was justified.

188.    Caldera's reliance caused him damages in the amount of un-refunded legal fees in the amount of $3,500.00.

## NINTH CLAIM FOR RELIEF
(Injunction Martinez and Arellano)

189. The Defendants filed with the United States, pleadings and declarations asserting false and defamatory statements against Martinez and Arellano.

190. These fraudulent statements were filed by the Defendants with USCIS in violation of 8 U.S.C.A. §1324c and section 274C(e)(1) of the INA make it unlawful for any individual to knowingly and willfully fail to disclose, conceal or cover up the fact that … he or she has, on behalf of any person and for a fee or other remuneration, prepared or assisted in preparing an application for immigration benefits with knowledge or reckless disregard of the fact that such application or document was falsely made.

191. While VAWA proceedings are civil and not criminal, the repercussions for the spouse and child accused of extreme abuse and cruelty can be profound and far-reaching including:

   a. **Immigration Consequences**: Even if not charged criminally, the spouse and child may be flagged in immigration records, potentially complicating their future petitions, such as sponsoring a family member or applying for certain benefits.

   b. **CPS and Law Enforcement Involvement**: Depending on the content of the VAWA filing, local law enforcement might be alerted, potentially triggering investigations.

   c. **Emotional and Psychological Damage**: Being labeled an abuser by one's own parent can have devastating emotional effects, especially on minors or young adults. The trauma of such a betrayal can lead to long-term mental health challenges.

   d. **Family Disintegration**: False claims can irreparably damage family relationships, leading to estrangement, mistrust, and ongoing emotional conflict.

192. These fraudulent statements caused Martinez and Arellano to suffer injuries including humiliation and fear, concerns about criminal prosecutions, and feelings of betrayal.

193.    The Defendants actions are likely to cause Martinez and Arellano harm in the future.

194.    There are inadequate legal remedies as Martinez and Arellano have no attorney client

relationship with the Defendants and cannot sue the Defendants directly for damages.

195.    The injuries to Martinez and Arellano cannot be undone or fixed with money alone.

196.    Martinez and Arellano request both a preliminary injunction and a permanent injunction as a

part of the final judgment.

197.    The injunction would not be adverse to the public interest.

198.    Any harm suffered by the Defendants is outweighed by the past, present and future injuries

to Martinez and Arellano.

199.    Martinez and Arellano have a substantial likelihood of success on the merits of a permanent

order ensuring that the Defendants retract and are prohibited from filing false and defamatory

documents with the United States concerning them.

200.    Plaintiffs pray for an injunction to compel the Defendants retract and to never to make false

and/or defamatory statements about Martinez and Arellano to the United States or any person.


WHEREFORE, Plaintiffs pray for an award of damages to be fixed by the trier of fact in a

reasonable amount, attorneys fees, all pre-judgment and post-judgment interest as provided by law,

costs, expert fees, attorney's fees, and for such other relief as the Court deems appropriate.

Plaintiffs further pray for a preliminary and permanent injunction to prohibit the Defendants

from making false and defamatory statements about Martinez and Arellano and to retract all such

statements.

Respectfully submitted on November 12, 2025

BETH KLEIN, P.C.
By: *s/ Beth Klein*
       Beth Klein
350 Market Street, Suite 310
Basalt, CO  81621
Telephone 303-448-8884
beth@bethklein.com


THE LOGAN FIRM, P.C.
By: *s/  Sarah A. Logan*
       Sarah A. Logan
4150 Darley Ave., Suite 6
Boulder, CO 80305
Telephone 303-494-5209
sarah@loganfirm.us

ATTORNEYS FOR PLAINTIFFS