IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.: 1:25-cv-3979

IVON GONZALEZ MARTINEZ;
ADRIAN CUEVAS CASTRUITA;
MARTHA CELENE ARELLANO;
ALEXANDRA CASTRUITA ARELLANO; and
JESUS ARRENDONDO CALDERA,

Plaintiffs,

v.

FRANCES CHRISTINE MENESES;
and MENESES LAW PLLC, a Texas Professional Limited Liability Company,

Defendants.

---

## MOTION TO AMEND TO ADD PUNITIVE DAMAGES AND A COLORADO CONSUMER PROTECTION ACT CLAIM

---

Plaintiffs submit their Motion to Amend to Add Punitive Damages and a Colorado

Deceptive Trade Practices Claim.

**Certificate of Conferral**:  The Undersigned certifies that she has conferred with opposing counsel who oppose the requested relief.

*I.    A Punitive Damages Claim Has Been Established With Sufficient Proof and Should Be Allowed.*
### A.  LEGAL STANDARD

In Colorado, a party's right to sue for exemplary or punitive damages is derived

from statute, <u>Stamp v. Vail Corp</u>., 172 P.3d 437, 447 n.12 (Colo. 2007) (en banc) (citing

<u>Kaitz v. Dist. Court</u>, 650 P.2d 553, 556 (Colo. 1982)), which provides:

> a claim for exemplary damages in an action governed by this section may
> not be included in any initial claim for relief. A claim for exemplary
> damages in an action governed by this section may be allowed by

> amendment to the pleadings only after the exchange of initial disclosures pursuant to rule 26 of the Colorado rules of civil procedure and the plaintiff establishes prima facie proof of a triable issue. After the plaintiff establishes the existence of a triable issue of exemplary damages, the court may, in its discretion, allow additional discovery on the issue of exemplary damages as the court deems appropriate.

C.R.S. § 13-21-102(1.5)(a) (emphasis added). Exemplary or punitive damages are only an available remedy if "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct." C.R.S. § 13-21-102(1)(a). The statute defines "willful and wanton conduct" as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others." C.R.S. § 13-21-102(1)(b).

"A determination of whether the plaintiff has established prima facie proof to add a claim for exemplary damages lies within the sound discretion of the trial court." Ferrer v. Okbamicael, 390 P.3d 836, 849 (Colo. 2017) (citation omitted). "The existence of a triable issue on punitive damages may be established through discovery, by evidentiary means, or by an offer of proof." Leidholt v. Dist. Court in and for the City and Cnty. of Denver, 619 P.2d 768, 771 (Colo. 1980). A plaintiff must articulate "[a] reasonable likelihood that the issue will ultimately be submitted to the jury for resolution" to demonstrate the requisite prima facie proof of a triable issue. Id. at n.3. When evaluating motions to add exemplary damages, courts should view the evidence in the light most favorable to the moving party. Colo. & Santa Fe Real Estate Co. v. Hartford Cas. Ins. Co., No. 10-CV-00405 MSK-KMT, 2010 WL 3714751 at *2 ("At this stage of the litigation, the court is concerned with only whether the evidence, when viewed in the light most favorable to Plaintiffs, is sufficient to make out a prima facie case . . ."); see also Am. Economy Ins. Co. v. William Schoolcraft, M.D., P.C., No. 05-cv-01870-LTB-

BNB, 2007 WL 160951, at *4 (D. Colo. Jan. 17, 2007) (granting a motion to amend for exemplary damages when the evidence is viewed in the light most favorable to the moving parties). The Colorado Supreme Court has recognized this to be a "lenient standard." Stamp, 172 P.3d at 449. "A plaintiff should have an opportunity to test the merits of any claim for relief that is supported by the underlying facts of the case." Id. at 450.

Any attack Defendant's factual version of events such as dissecting proof, evidentiary arguments, and attacks on the filing's party's narratives is not the appropriate inquiry at this stage. Instead, the Court must determine whether Plaintiff has stated a prima facie case and must view the proffered information in the light most favorable to Plaintiff. See generally, Colo. & Santa Fe Real Estate Co., 2010 WL 3714751, at *2. The Court is not to treat this as a motion for summary judgment or analyze whether the evidence is sufficient to support a jury verdict in favor of Plaintiff. See RCHFU, LLC v. Marriott Vacations Worldwide Corporation, No. 16-cv-1301-PAB-GPG, 2018 WL 3055772, at *4 (citing Am. Econ. Ins. Co., 2007 WL 160951, at *2).

In this matter exemplary or punitive damages should be permitted because the injury complained of is attended by circumstances of fraud and willful and wanton conduct." C.R.S. § 13-21-102(1)(a). The statute defines "willful and wanton conduct" as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others." C.R.S. § 13-21-102(1)(b).

Here, Meneses Law PLLC ("Meneses Law") and Christine Meneses defrauded the client Plaintiffs and many others by creating fraudulent declarations, submitting

fraudulent VAWA petitions for a process none of the three client Plaintiffs qualified for, and engaging in a nationwide system of generating fraudulent VAWA petitions.  All of these frauds are attended with circumstances of willful and wanton conduct.  Meneses Law and Christine Meneses care only about their profit rather than representing clients honestly and properly in immigration matters.

### B.  PRIMA FACIE PROOF FOR PUNITIVE DAMAGES

The filing of fraudulent VAWA claims is a nation-wide practice of Meneses Law and Christine Meneses.   According to the Declaration of Blanca Bernardino (Exhibit A), a former employee of Meneses law, 97% of the cases filed by Meneses Law and Christine Meneses are VAWA petitions.  The clients are obtained through misleading advertisements on Facebook and TikTok which claim that anyone with a U.S. citizen spouse of child over 21 could "fix their papers" regardless of their criminal history or previous illegal entries into the United States.  Id. These ads reached audiences of up to eight million people nationwide. Id.

Once a potential client calls into Meneses Law, unlicensed staff tell callers that simply having a U.S. citizen relative made them eligible to "adjust" status without ever disclosing that the legal process being initiated was through VAWA.  Id.  Facts provided by clients were distorted and embellished to create a narrative of abuse.  Many of the declarations share identical language.  Id. Staff was forbidden from explaining the process or mentioning the word "VAWA."  During some months, the firm filed up to 400 VAWA petitions. Id.

The Affidavit of Nayeli Cristina Torres Delgado indicates the staff of Meneses Law filed VAWA petitions based upon "financial stress: when these clients had never been abused and were not eligible to submit a VAWA petition.  (Exhibit B).  The Affidavits of Darlin Sarai Lima Barahona (Exhibit C), Esteban Agundis Olvera (Exhibit D) Francisca Garcia Ruiz (Exhibit E), Jose Martin Rostro Garcia (Exhibit F), Sabina Caxaj (Exhibit G), Attorney Amanda Waterhouse (Exhibit H), Attorney Hugo Balderas Ibarra (Exhibit I), Attorney Alexandre I. Afanassiev (Exhibit J), Josue Fernando Yax (Exhibit K), also provide proof that clients of Meneses Law are not informed about VAWA, are not qualified for VAWA, and have had a false petitions submitted on their behalf by Meneses Law and Christine Meneses.

It is undisputed that the Defendants represented Martha Celene Arellano Aguilar (Aguilar), Adrian Cuevas Castruita (Castruita), and Jesus Arrendondo Caldera (Caldera) in their immigration cases.  (Aguilar's Responses to Interrogatories Exhibit L, page 13, Resp. to Rog No. 5, page 27 Resp. to Rog. No. 10)(Castruita's Responses to Interrogatories Exhibit M Resp. to page 14 Rog No. 5 and page 24 Resp. to Rog. No 10) and (Caldera's Amended Responses to Interrogatories, Exhibit N page 15 Resp. to Rog. No. 5.)[1]

Rather than providing any advice or real analysis of what processes or forms of relief they actually qualified for, all three client Plaintiffs were funneled into the Meneses Law machine to file a false VAWA claim.  None of the Plaintiffs were advised either in the advertising or in their consultations that they would be accusing a United States

---

[1] For the convenience of the Court, the English version of the Responses are provided; a Spanish version is available.

citizen spouse or child over 21 of extreme cruelty or abuse.  (Exhibit L, pages 8 and 9, page 13 Resp. to Rog. No. 4, page 27 Resp. to Rog. No. 11)(Exhibit M, pages 9 and 10, pages 13-14 Resp. to Rog. No. 4, page 25 Resp. to Rog. No. 11) and (Exhibit N, pages 10 and 11, pages 15-1 Resp. to Rog. No. 4, page 70-71 Resp. to Rog. No. 11)

The Defendants conducted interviews of these Plaintiffs and then took facts and converted truth into fabricated false Declarations to be filed with the United States.  The Plaintiffs were not shown the Declarations and did not sign them. The Plaintiffs have all stated that the Declarations created by Meneses Law are false.(False Statements in Red)  (Exhibit L pages 2 – 7)(Exhibit M pages 2 – 8), and (Exhibit N pages 4 -8) and they have all either withdrawn their applications or stopped the Meneses VAWA claims process before the fraud could be perpetrated on the United States. (Exhibit L, page 27 Resp, to Rog. No. 12 and page 28 Resp. to Rog. No. 16) (Exhibit M, page 25 Resp, to Rog. No. 12 and page 26  Resp. to Rog. No. 16)(Exhibit N page 72 Resp. to Rog. No. 16.)

The declarations contain similar incendiary false language for example:

| Castruita –  ¶5 | Aguilar –  ¶4 |
|---|---|
| Ivon **intimidates me with her looks and gestures of disdain, causing me to cringe under her stare to avoid her** explosive temper. Ivon **goes out of her way to ensure I understand I am bothering her and getting on her nerves. When** Ivon **gets mad, she will sometimes refuse to acknowledge my presence. I** could **be standing directly in front of her, and she will roll her eyes and twist her mouth into** | Alexandra **intimidates me with her looks and gestures of disdain, causing me to cringe under her stare to avoid her temper.** Alexandra **goes out of her way to ensure I understand I am bothering her and getting on her nerves. When** Alexandra **gets mad, she will sometimes refuse to acknowledge my presence. I** can **be standing directly in front of her, and she will roll her eyes and twist her** |

| | |
|---|---|
| a scowl so that I have visual confirmation of how repulsing my presence is to her. I think about how easily Ivon disrespects me, and I feel like less of a man for being unable to have a simple conversation with her. Sometimes, she even leaves the room or house while I am midsentence. My words hang in the air, a reminder that she does not care about anything I have to say. The silence is suffocating, and I struggle to maintain my composure when my words fall on deaf or absent ears. She can **ignore me** for weeks at a time, **and I dig in my brain to find an explanation for this inflicted torture, but I know that if I push for a response, she can lash out in much more insulting ways.** | mouth into a scowl so that I have visual confirmation of how repulsive my presence is to her. I think about how easily Alexandra disrespects me, and I feel like less of a woman for being unable to have a simple conversation with her. Sometimes, she even leaves the room or house while I am midsentence. My words hang in the air, a reminder that she does not care about anything I have to say. The silence is suffocating, and I struggle to maintain my composure when my words fall on deaf or absent ears. I feel ignored and invisible to my daughter, and I dig in my brain to find an explanation for this inflicted torture, but I know that if I push for a response, she can lash out in much more insulting ways. |

| Castruita –Conclusion | Aguilar – Conclusion |
|---|---|
| **Because of my current situation, I feel helpless. I have no say or authority to do anything** other than **what I am already doing. I have no control over my life. As** my son and **I get older, I wonder how much worse things will get for me** and us. **I am praying for a solution to all my problems. I can no longer live with this shame. I dream of obtaining my residency and providing a better future for my** child **and me.** | **Because of my current situation, I feel helpless. I have no say or authority to do anything** besides **what I am already doing. I have no control over my life. As I get older, I wonder how much worse things will get for me. I am praying for a solution to all my problems. I can no longer live with this shame. I dream of obtaining my residency and providing a better future for my** family **and me.** |

---

**Caldera Conclusion**

**Because of my current situation, I feel helpless. I have no say or authority to do anything other than what I am already doing. I have no control over my life. As tim**e passes**, I fea**r how much worse things will get for m**y family **and** me. I am praying for a solution to all my problems. I can no longer live with this shame. I dream of obtaining residency**, providing a better future for my **fam**il**y**, **and** finally gaining the peace of mind my daughter has denied **me** for far too long**.

---

When asked when and how Aguilar and Castruita reviewed their declarations,

Cristina Meneses as the 30(b)(6) representative testified that it could not be determined.

(Excerpts of 30(b)(6) of Meneses, Exhibit O)(with client name added)

Page   30

Q.   All right.  How would you determine whether the declaration was ever sent to him [Adrian Cuevas Castruita} in any way?
A.   There's no way for me to determine that.

Page  32

Q.   Do you -- do you know who had a conversation with Martha Celene authorizing the application and her signature to the declaration?
A.   I don't know if that was what they did in that case.  I don't know if they asked for an authorization of the signature in her case.
Q.   Do you know if she ever saw the declaration?
A.   I can't tell you that.

II.  *Amendment to Include a Colorado Consumer Protection Act, § 6-1-101, et seq.,  Claim is Warranted.*

The CCPA was enacted to prevent and, where appropriate, businesses who commit deceptive practices in their dealing with the general public by providing remedies against business who commit consumer fraud. People ex rel. Dunbar v. Gym of America, Inc., 177 Colo. 97, 112, 493 P.2d 660, 667 (1972); Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc., 62 P.3d 142, 146 (Colo. 2003). In sum, the CCPA was enacted to protect the public at large from businesses who use deceptive practices in the course of their business dealings with existing or potential consumers.

To prove a private cause of action under the CCPA, a plaintiff must show: (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of the defendant's business, vocation or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury. Rhino Linings USA, 62 P.3d at 146-47 (citing Hall v. Walter, 969 P.2d 224 (Colo. 1998)).

To establish the public impact element of a CCPA claim, a claimant must prove, among other things, that the alleged deceptive trade practice "significantly impact[s] the public as actual or potential consumers." Hildebrand v. New Vista Homes II, LLC, 252 P.3d 1159, 1169 (Colo. App. 2010) (citing Hall v. Walter, 969 P.2d at 234).

CO Rev Stat § 6-1-105 (1)(u) provides that a person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the

person . . . fails to disclose material information concerning services which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction.

The Colorado Supreme Court has held that unfair or deceptive trade practices must be intentional in order to establish liability. That is, negligent actions do not amount to unfair or deceptive trade practices under the act. See Crowe v. Tull, 126 P.3d 196 (Colo. 2006).

Whether a particular trade practice has a significant impact on the public is a question of fact as opposed to a question of law and, accordingly, is one reserved to the finder of fact. See One Creative Place, LLC v. Jet Center Partners, LLC, 259 P.3d 1287 (Colo. App. 2011). The factors considered for the element of "significant public impact" are the following:

(1) the number of consumers directly affected by the challenged practice;

(2) the relative sophistication and bargaining power of the consumers affected by the challenged practice; and

(3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future.

Rhino Linings, USA, Inc. v. Rocky Mountain Rhino Lining, Inc., 62 P.3d 142, 149 (Colo. 2003).

In this case, in the course of their law practice and business Meneses Law and Christine Meneses violated CO Rev Stat § 6-1-105 (1)(u) by failing to disclose material information in their advertising and client sign up process about the real criteria to file a VAWA claim on behalf of the client Plaintiffs at the time the fee agreement was signed.

Indeed, in this case Meneses Law and Christine Meneses never told any of the client Plaintiffs that they were going to file a VAWA claim.

The failure to disclose to the client Plaintiffs that they would have to accuse their U.S. citizen spouse or child over 21 was intended to white wash the VAWA process so that clients would sign fee agreements thinking the process was simple and pay money to Meneses Law and Christine Meneses.  The Meneses Law website is scrubbed of any reference to the need for an accusation of extreme cruelty of abuse. https://www.meneses.law/  The Meneses TikTok, Instagram and Facebook advertisements do not tell consumers that they must accuse a spouse or a child over 21 of extreme cruelty or abuse.  Across every communication channel in the documents disclosed by both parties – the Meneses Law  texts the iPhone-to-iPhone texts, and the emails - not a single message sent to any of the clients ever mentioned any adverse consequences of the course of action planned by the Defendants.  (See Exhibit L, M, and N.)

The fraudulent Meneses Law and Christine Meneses ads reach over eight million people, including extremely vulnerable people without status in the United States who want a green card and residency.  (See Exhibit A.)

This nationwide business model was intentionally designed in order to maximize the profits of Meneses Law and Christine Meneses by processing 97% of the firm's clients in a cheap VAWA process without regard to the validity of the claims or the consequences to the clients.

These frauds caused significant harm to Plaintiffs Arrellano and Castruita who suffered injury in fact to a legally protected interest. These frauds have caused harm to their families.  Plaintiff suffered the loss of fees paid, risk of denial of future immigration benefits, fraud findings under 8 U.S.C. § 1182(a)(6)(C)(i), and, depending on agency enforcement decisions, potential referral for further immigration enforcement action. They also face the cost of successor counsel and remediation.  They have had to incur attorney's fees and costs to bring this action and fight the aggressive defense.  With respect to Plaintiff Caldera, he has also suffered injury to a legally protected interest. He paid fees which were not refunded, and he has incurred attorneys' fees and costs for prosecuting this matter. All three Plaintiffs have incurred lost interest at 8% interest compounded annually for improperly withheld property.

### III.  F.R.Civ.P. Rule 15 Standards are met, the Scheduling Order deadline has been met, and there has been no undue delay or undue prejudice to the Defendants.

Rule 15(a)(2) provides that a party may amend its pleading with the court's leave. The court should freely give leave when justice so requires.   The deadline to amend in the Scheduling Order is today, August 3, 2026, and there has been no undue delay or undue prejudice to the Defendants.  "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962).

Amendments relate back to the date of the original complaint, and are thus permitted, only when all elements of Rule 15(c) are met. Alexander v. Beech Aircraft Corp., 952 F.2d 1215, 1226–27 (10th Cir. 1991). In order to relate back for statute of limitations purposes, the new claim must arise from the same "conduct, transaction, or occurrence" as set forth in the original pleading. Fed. R. Civ. P. 15(c)(1)(B).  Here the

conduct all relates from the same conduct as alleged in the original Complaint.

Colorado law only permits punitive damages to be alleged in an amended complaint.

### IV.  Factual Changes

After obtaining additional evidence in this case, factual amendments have been made to reflect that Martinez was a client of the Defendants because she was the primary contact for all communications concerning the Castruita matter and all fees were paid with her credit card.  Martinez believed that she was being represented by the Defendants in a family petition.  Additional factual details have been amended to reflect the state of the evidence as noted in the red-lined copy of the Amended Complaint. Since the original complaint was filed in state court, additional allegations have been made to conform with federal diversity law.

### V.     Conclusion

Plaintiffs have set forth prima facie evidence of fraud perpetrated on them as individuals who have been defrauded by Meneses Law and Christine Meneses. Plaintiffs have provided evidence that the Defendants' engaged in willful and wanton conduct pursuant to C.R.S. § 13-21-102(1)(a).  The criteria for permission to amend as set forth in Stamp v. Vail Corp. has been established.  A claim for punitive damages should be permitted.

Further, Plaintiffs have provided evidence and properly asserted violations of the Colorado Consumer Protection Act including ads that reach 8 million people and affect vulnerable people seeking legal status in the United States.   A claim under the CCPA

should also be permitted against the Defendants.  Copies of the red-lined and final

Amended Complaint are attached as Exhibits P and Q with a form of Order, Exhibit R.

Dated August 3, 2026

s/ Beth A. Klein
**Beth A. Klein**
BETH KLEIN, P.C.
350 Market Street, Suite 310
Basalt, Colorado  81621
Telephone:  (303) 448-8884
beth@bethklein.com
Attorney for Plaintiffs

### CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2026 , I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record.

s/ Beth A. Klein
**Beth A. Klein**