| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF HARRIS** | § |

### AFFIDAVIT

Nayeli Cristina Torres Delgado appeared in person before me today and stated under oath:

"My name is Nayeli Cristina Torres Delgado, and I am over the age of 18. The facts stated in this affidavit are within my personal knowledge and are true and correct."

"I am from Mexico. I entered the United States around September 2008. I am married to a lawful permanent resident. Together we have two beautiful sons, Uriel (age 16) and Alex (age 10), who are U.S. citizens."

"I hired Meneses Law on or around January 29, 2025, to assist me with my immigration matters. To date, I have paid them approximately $6,500 for their services, though my contract is for $14,550 total."

"My husband and I went to an in-person consult with someone who I think is a legal assistant at Meneses. She told us that I was eligible for a family-based petition. She also said I would be able to adjust my status from within the United States."

"I was so relieved and excited, especially because I would not have to leave the country and my family, in order to fix my status, as another attorney had told me before. The Meneses legal assistant said that I would get my work permit in six to eight months and my residency in about four years. She also suggested that my husband naturalize."

"After signing the contract, I had two more appointments with Meneses to gather more information for my petition. Both of these were over the phone with the legal assistant who had done my consultation. I have never actually met Attorney Christine Meneses, even though she's the one I hired to represent me under my contract."

1

"During the first appointment, the legal assistant asked me lots of questions about whether my husband mistreats me. She asked if he was ever violent with me. I told her that we have disagreements, like any couple, but that my husband has never been violent with me."

"The legal assistant also asked if we have any family stress or financial stress, as this could help with the petition. She asked a lot about our jobs. I told her that of course we sometimes experience stress in our family, as well as financial stress."

"During the second appointment, the legal assistant returned to the topic of my husband mistreating me. She was very insistent on talking about it. She asked what my husband does when we fight, as well as what kind of things he says to me and how he speaks to me when he's angry. I laughed a little and joked that there's no fighting with my husband because he leaves to cool down whenever we have a disagreement. The legal assistant also asked if my husband threatened me. I told her that he never has."

"It came up that my husband is not the father of my children. When the legal assistant heard that, she began asking me the same kinds of questions about my ex. I told her that thankfully, my ex had never abused me, either."

"This line of questioning seemed a bit strange to me, but I answered honestly and figured Meneses was asking for a reason. Before this, no one at Meneses ever mentioned the Violence Against Women Act or VAWA, nor did they explain what VAWA was. I never received copies of anything Meneses prepared on my behalf. I relied on Meneses's advice and believed they were handling my case properly."

"The only interaction my husband ever had with Meneses, other than the initial consultation for my case, was to drop off the results of my medical exam. Even though Meneses told us they were preparing a family-based petition for me, they never called to ask my husband

any questions. We had friends going through the same process, and their lawyers wanted to talk to both the husband and the wife. However, because I know nothing about immigration law, I trusted that Meneses was handling my case correctly."

"Recently, my neighbor—who knew that Christine Meneses was my lawyer—sent me a video of a press conference about immigration fraud hosted by FIEL Houston. She begged me to watch the video and ask Meneses about my case, since video was discussing fraudulent VAWA application filings."

"I watched the video and could not believe it. This was the first time I had heard of what VAWA was actually about. After watching the video, I looked at my contract and saw that my application was listed as a form I-360. I looked up the form number and found out it was a VAWA application. I read that VAWA is for people who have suffered extreme violence, which I had never suffered."

"I called Meneses to tell them I was worried about my petition. I told them I had heard there were cases of fraudulent VAWA applications at the firm and that I did not want me or my husband to get into trouble. I also asked why Meneses had submitted an I-360 VAWA petition on my behalf when I told them I have never been abused."

"The person who answered—who did not introduce themselves—said that abuse was not necessary. They said that the rules had changed, and that family or financial stress was enough to qualify for VAWA now."

"I asked for a copy of my file, but the person said they had to talk to a supervisor, who would call me back. When the supervisor called me, I told her the same thing I had told the previous employee: that I had never been a victim of violence and I was worried about my case."

3

"The supervisor gave me the same answer as the previous employee, saying that I should not worry because things had changed. She said that my case could be based entirely on financial stress. She also made me an appointment to come into the office so we could talk everything through and so I could pick up a copy of my file."

"However, I was still worried. I went to see FIEL Houston, the organization that hosted the press conference about VAWA fraud. FIEL referred me to Gonzalez Olivieri LLC. Gonzalez Olivieri requested a copy of my file from Meneses on my behalf before my appointment date."

"Meneses called to ask if I consented to sharing my file with Gonzalez Olivieri LLC. I told them that yes, it was fine, and they cancelled my appointment. They said that I had a new attorney and had no reason to come in anymore."

"This experience has been incredibly stressful. I am working with a new attorney who has confirmed that I am not eligible for VAWA, which means that Meneses submitted a fraudulent application on my behalf without my knowledge. They never fully explained what was being filed, and I was never provided a copy of the documents submitted to the immigration service."

"As a result of Christine Meneses's actions, I may now face serious immigration consequences. I've been so anxious, especially with all the ICE raids going on."

"When I found out that Meneses submitted a VAWA application even though I am not eligible, I was filled with fear that I would be deported. My husband has seen me have anxiety attacks where all I do is cry because I am so afraid that ICE will come take me away from my family due to Meneses's actions. It is overwhelming."

"I did not knowingly agree to submit a fraudulent application, and I feel taken advantage of by Christine Meneses and her office. My new attorneys have advised me that I may have grounds to fix my case and that I may file a grievance against Christine Meneses for misconduct."

4

"I would not have agreed to file a VAWA petition if I had understood that I was not eligible. I did not knowingly agree to submit any false information, and I am taking steps to correct what happened. I feel misled by Meneses and taken advantage of during a time when I was vulnerable and unsure about my immigration options."

"I am submitting this affidavit as part of that process. I want to make it clear that I never intended to lie or defraud the immigration authorities, and I trusted that my attorney would act in my best interest and in accordance with the law."

"I swear under penalty of perjury that the above is true and correct to the best of my knowledge and belief."

FURTHER THE AFFIANT SAYETH NOT

_____
Nayeli Cristina Torres Delgado

SWORN TO AND SUBSCRIBED before me, the undersigned authority, on September 12, 2025.

LESLEY GONZALEZ
Notary Public, State of Texas
Comm. Expires 02-28-2028
Notary ID 134786873

_____
Notary Public in and for the State of Texas

My Commission Expires: 02/28/2028

## Certificate of Translation

I, Lesley Gonzalez, hereby certify that this translation is a complete and accurate English translation of the testimony, that I translated it, and that I am competent in both English and Spanish languages to render such translations. I further certify that the above translation was read back to the affiant in her native Spanish language and that she affirmed she understood the translation before signing.

Certified this September 12, 2025

Lesley Gonzalez, Legal Assistant

9920 Gulf Freeway, Suite 100
Houston, Texas 77034

6